[Crim. No. 4178. Second Dist., Div. Three. Mar. 24, 1948.]

THE PEOPLE, Respondent, v. EVERETT ARTIE
GRAVES, Appellant.

Walter L. Gordon, Jr., for Appellant.

Fred N. Howser, Attorney General, and Elizabeth Miller,
Deputy Attorney General, for Respondent.

WOOD, J.—Defendant Graves and one Pinkston were accused of the crime of violation of section 11500 of the Health and Safety Code, in that, on March 31, 1947, they unlawfully had in their possession a preparation of opium. Upon stipulation, the People's case as to defendant Graves was "submitted on the transcript of testimony taken at the preliminary hearing and the exhibit, which exhibit is admitted in evidence and marked Exhibit No. 1, both sides reserving the right to introduce additional evidence." Pinkston pleaded guilty. In a trial without a jury (a jury having been waived), defendant Graves was adjudged guilty. He appeals from the judgment, and asserts that the evidence was insufficient to justify the conviction and that the court erred in receiving certain evidence.

A police officer testified that on March 31, 1947, about 9:05 p. m., he and another officer went to a window of a certain house in Los Angeles; that the third or fourth slat of the Venetian blind at the window was tilted inward, and he looked through the blind where the slat was tilted and saw the defendant Graves and Pinkston lying on a bed facing each other; that a girl was lying at the foot of the bed; that at that time Graves had, in his hands, a 3-ounce bottle, a nipple, and a glass tube, which he was holding over a lighted lamp, and he had the tube in his mouth; that the lamp was on the bed between them; that Pinkston had a yen pock (an opium pill) in the flame of the lamp "and was rolling it over the top" of a hole in the bottle; that Graves held the tube in his mouth "off and on at intervals" for approximately seven minutes; that Graves then handed the instrument (bottle, nipple and tube) to Pinkston, who put the tube in his mouth, and held a yen hock (a device for cooking an opium pill over a flame) over the flame of the lamp; and that the officers were at the window about 22 minutes. The officer testified further that they (the officers) then entered the house through a window of another room and went into the room where the defendants were; that at that time Pinkston was off the bed, had the yen hock in his hand, and then threw it on the bed; that Graves was just getting off the bed; that the girl was off the bed; that a lighted lamp was on a platter on a table pad in the center of the bed; that the "pipe" was on the bed and was very hot; that he (the officer) took the yen hock off the bed; that a small yen pock was on the bed and another small one was in a dish in the room; and that a package and a jar

of black granular substance known as yen shee (carbonized opium) were on a table in the room.

The officer also testified that he asked Graves how long he had been smoking opium, and he said, "I have been smoking opium for about a year"; that he (the officer) asked him how long he had been smoking opium "this night," and he said, "What time did you first get here?"; that the officer then said, "When I first saw you, you were smoking opium," and then Graves said: "I haven't smoked since then. I smoked for only about 15 minutes." The officer also testified that he asked Graves how long he had been smoking opium in that house, and that Graves said he had only been there once, and that he had been smoking opium with Pinkston about six or eight times before.

A police officer, who was qualified as a forensic chemist, testified that he examined the substances referred to herein as yen pock and yen shee, and that those substances were opium and carbonized opium respectively; that he examined the bottle (with the hole in it), the nipple and glass tube, and that in his opinion, based on his experience in observing paraphernalia used by opium users, those three things when put together form a crude opium pipe; that a yen hock "consists of a piece of metal sharpened at one end and blunt on the other end to cook a pill or pock over the flame"; that in the opium smoking business, in his opinion, a yen hock is used by placing a small amount of opium on it and rotating it over a small flame in order to get the opium to the right consistency, and then the opium is put in contact with the pipe and is inhaled by the smoker.

Graves testified that he had lived in the house referred to herein, and that he had moved from it about a month before he was arrested; that on the occasion when he was arrested he had gone to the house to see if he had any mail there; that after he moved from the house he had not returned to it until the day of his arrest; that Pinkston and the girl were in the house when he arrived there; that Pinkston was smoking opium; that he (Graves) had been there about an hour before he was arrested; that at the time of the arrest Pinkston told the officers that the opium belonged to Pinkston and that he had paid $100 for it; that Graves told the officers that he (Graves) did not use the opium; that one of the officers said that he looked through the window and saw everyone in there using it; that Graves replied that the officer had made

a mistake, that Graves did not use it, and it was impossible for the officer to see into the room through the Venetian blinds; and that he (Graves) had not been smoking "any of that stuff in that room."

Pinkston testified that the Venetian blinds were new and in perfect order, and that no blind was at such an angle that anyone could see into the room; that Graves was not smoking any of this opium that day. On cross-examination he testified that he went to the house about 8 p. m., and that he took the opium and paraphernalia with him to the house; that he began smoking opium about 8:30 p. m.; that about noon of that day he had hidden the opium in some bushes near the house; and that at the time he hid the opium in the bushes the apparatus was "already there" in the bushes, but he did not know who put it there.

Appellant argues that the evidence, if believed, was sufficient to show that Graves was in possession of an opium pipe or that he attended an opium resort, but there was no evidence tending to show that he had a preparation of opium in his possession; and that, on the contrary, the evidence established that it was Pinkston who was in possession of the opium. In the view of the evidence most favorable to the respondent, the evidence shows that the officer saw appellant with the tube of the crude opium pipe in his mouth at intervals for approximately seven minutes; that appellant admitted that he had been smoking opium at approximately the time when the officer said he saw appellant with the tube of the pipe in his mouth; that an opium pill was being rolled over the hole in the bottle part of the pipe while appellant had the tube of the pipe in his mouth; that when the officers entered the room suddenly an opium pill was then found on the bed at a place thereon which was between the places where appellant and Pinkston had been lying; that another opium pill was found in a dish in the room, and a jar of carbonized opium was also in the room. ■ Under the provisions of said section 11500 of the Health and Safety Code, possession of a preparation of opium exists when a person has the actual control or dominion over it, or when he has the right to possession or control of it, either individually or through an agent. ■ The trial judge could have inferred properly from the evidence herein that Pinkston and appellant actually possessed the opium jointly, or that appellant had the right of possession or control of it individually, or that while Pinks-

ton was holding the opium pill over the flame and while rolling it over the hole in the bottle, when appellant was smoking, appellant had constructive possession of it through Pinkston as his agent. (See *People* v. *Johnson,* 66 Cal.App.2d 164, 165 [152 P.2d 331]; and *People* v. *Gallagher,* 12 Cal.App.2d 434, 436 [55 P.2d 889].) The evidence was sufficient to support the conviction.

 Appellant also contends that the trial court erred in receiving in evidence certain testimony which was included in the transcript of the preliminary examination. Upon stipulation, as above stated, the People's case as to appellant was submitted on the transcript of the testimony taken at the preliminary examination. That transcript shows, as above indicated, that the officer testified that appellant said he had been smoking opium for about a year, and that he had smoked opium with Pinkston six or eight times before. That transcript also shows that counsel (not present counsel) who represented appellant at the preliminary examination made a motion to strike out the testimony last above referred to on the ground that it was immaterial, and that the motion was denied. At the trial herein in the superior court, counsel for appellant did not object to that testimony or move to strike it out. Apparently it is appellant's contention that even though he stipulated that the People's case might be submitted upon the testimony taken at the preliminary examination, and even though at the trial he made no objection to or motion to strike out that testimony, the trial judge should have announced or in some manner indicated that he would not follow that particular ruling of the committing magistrate. There was no such responsibility on the part of the trial judge. It was the duty of appellant to object to such testimony as he deemed objectionable. The trial judge was entitled to rely, in the absence of an objection to particular testimony, upon the stipulation that the People's case was submitted on the testimony taken at the preliminary examination. This contention of appellant is not sustained.

The judgment is affirmed.

Shinn, Acting P. J., and Vallée, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 22, 1948.