[Crim. No. 2752. First Dist., Div. One. Mar. 12, 1952.]

THE PEOPLE, Respondent, v. PATRICIA WALLACE, Appellant.

Leslie C. Gillen for Appellant.

Edmund G. Brown, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

PETERS, P. J.—Patricia Wallace, in a trial before the court without a jury, was found guilty of unlawful possession of narcotics in violation of section 11500 of the Health and Safety Code. From the judgment of conviction she appeals. She admits possession of the narcotics, but claims that the evidence shows, without contradiction, that the narcotics belonged to one Levy, who had secured them by prescription, and that they had inadvertently been left in her home by Levy, and that she was merely keeping them for him until he could call for them. She urges that for this reason her possession of the narcotics was not illegal.

The record shows the following: On July 10, 1950, Dr. Anderson, in Berkeley, gave to one of his patients, Elious Levy, a prescription for 36 tablets of dolophine, a drug containing morphine. That same evening, or perhaps the next night, Levy and his wife visited Levy's brother-in-law, one Morel Marshall, who lived in the Patri Hotel in San Francisco. That hotel was operated by the defendant Patricia Wallace, who leased the premises and owned the furniture. She also resided at the hotel. Marshall and Wallace were friendly. The Levys visited with Marshall and Wallace for several hours. According to Levy, during the visit, and while Wallace was present, Levy gave the prescription to Marshall and asked him to have it filled at a drugstore adjoining the hotel. Marshall had the prescription filled, and delivered the bottle of tablets, 36 in number, to Levy in the presence of Wallace. Levy took two of the tablets, and set the bottle on the kitchen table. He testified that when he left that evening he forgot to take the bottle with him.

Defendant Wallace testified that she did not see the bottle of tablets on the table before Levy left, or after he left. The next day, according to her story, her 13-year-old son brought the bottle to her and told her that he had found it on the sink. Defendant then testified that she looked at the bottle, saw Levy's name on the label and immediately telephoned to Mrs. Levy, who told her to put the pills away, and that

when Levy, who was a Pullman porter, returned from a trip, they would come over and get the bottle. The bottle does not contain Levy's name on the label. Moreover, it is of some significance that Mrs. Levy was not called to verify this telephone conversation.

Defendant further testified that, after her telephone call to Mrs. Levy, she locked the bottle up in a jewelry box for the reason that she wanted to keep it away from her son.

The bottle of narcotics was found on July 26, 1950, when the police apparently found Marshall and others in unlawful possession of other narcotics in the hotel, and upon searching defendant's room found the bottle under Wallace's bed in the locked jewelry chest. Rinken, one of the officers, testified to finding the bottle in the locked chest in the room occupied by defendant. He testified that defendant then told the officers that the bottle was hers; that the pills were medicine used by her to pass kidney stones, and that it was called dolophine. The label on the bottle had the word "dolophine" written on it in ink when the bottle was introduced into evidence, but it had no such word on it when it was found by the police, that word having been written on the label by the police chemist when he examined the contents of the bottle. When discovered by the police, the bottle had but 27 tablets in it. Defendant also told the arresting officers, according to Rinken, that she had a prescription for the tablets which had been filled "downstairs."

Defendant denied this conversation almost in its entirety. She denied telling the police officer that the prescription was hers, that the bottle was hers, or that she used the medicine herself to pass kidney stones, or for any other reason. She stated that she could not have made such a statement because Levy's name was on the bottle—but, as already pointed out, it was not. She denied stating to the police, or even knowing, that the bottle contained dolophine. She denied that she had ever taken any of the pills. She admitted that she had not asked her boy if he had taken any of the pills.

As already pointed out, the bottle originally contained 36 tablets. Levy took two. When found by the police the bottle contained but 27 tablets. Defendant could not explain this discrepancy.

The bottle was discovered about July 26, 1950, and defendant was not arrested until about 10 days later.

On this evidence the trial court found defendant guilty of a violation of section 11500 of the Health and Safety Code.

That section provides: "Except as otherwise provided in this division, no person shall possess, transport, sell, furnish, administer or give away, or offer to transport, sell, furnish, administer, or give away, or attempt to transport a narcotic except upon the written prescription of a physician, dentist, chiropodist, or veterinarian licensed to practice in this State."

Appellant contends that when a guest legally obtains narcotics and inadvertently leaves them at the home of his hostess, who locks them up for safekeeping, it does not constitute a violation of the section. If these were the facts there might be merit in the argument. But these are not the facts most favorable to the prosecution. ■ According to Officer Rinken, appellant admitted that she knew the bottle contained dolophine, claimed the bottle belonged to her, admitted that she consumed some of the tablets, and claimed to have a prescription for that purpose. The bottle contained seven tablets less than when Levy left it. Although the bottle was in appellant's possession for 15 or 16 days after Levy left it before it was found by the police, Levy made no effort to recover it in that period. Mrs. Levy was not called to corroborate the claimed telephone message. Thus, taking the evidence most favorable to the prosecution, as we must, we have possession by appellant, her admission that she knew it was a narcotic, and her admission that she consumed some of the pills.

■ Possession proves a prima facie case. (*People* v. *Physioc*, 86 Cal.App.2d 650 [195 P.2d 23] ; *People* v. *Cucco*, 85 Cal.App.2d 448 [193 P.2d 86] ; *People* v. *Graves*, 84 Cal. App.2d 531 [191 P.2d 32] ; *People* v. *Rumley*, 100 Cal.App.2d 6 [222 P.2d 913] ; *People* v. *Ramirez*, 104 Cal.App.2d 710 [232 P.2d 31].) ■ While the accused may defend on the ground that his possession was lawful because the narcotics were secured by a prescription issued to him, the fact that the prescription was issued to another does not conclusively prove that the accused's possession was lawful. If the trial court had believed the testimony that appellant was merely the involuntary custodian of the tablets inadvertently left in her home by Levy, it would have been justified in finding that her possession was not unlawful. But it was not required to believe that testimony. Credibility of the witnesses and conflicts in the evidence are to be resolved by the trial court, and that rule applies, of course, where the conflicting testimony is that of a police officer. (*People* v. *Shafer*, 101 Cal.

App.2d 54 [224 P.2d 778].) In the instant case the trial court was justified in believing that, even if Levy did leave the narcotics in appellant's possession inadvertently, appellant assumed control, dominion and possession of them for the purpose of using them herself. This would render her possession unlawful.

There is nothing in *People* v. *Ard*, 25 Cal.App.2d 630 [78 P.2d 254], the only case cited by appellant, that supports her conclusion that her possession in the instant case was lawful. In that case Ard was a nurse, and came into possession of the narcotics for the use of a patient he was transporting to Texas. Shortly after arriving in Texas the patient died. Up to that time undoubtedly the possession of Ard was lawful. But Ard returned to California after the death of his patient, and was found in California in possession of the drugs some 30 days after the death of the patient. The court held that Ard's lawful possession ceased upon death of the patient and that his possession thereafter was unlawful. The case, rather than supporting appellant, supports the finding of guilt in the instant case. Even if appellant's possession here was originally lawful, by her exercising dominion over the tablets and consuming some of them, her possession became unlawful.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.