ASHBURN, J.
 

 Defendant was- charged in four counts with violations of subdivisions 1, 2, 4 and 6 of section 337a of the Penal Code, relating to bookmaking. The count relating to subdivision 4 was dismissed and a conviction resulted on the other three counts, the cause being tried on the transcript of the preliminary hearing. One prior conviction was proved and defendant was sentenced to six months on each count, the sentences to run concurrently. He bases his appeal on the contention that the evidence is not sufficient to sustain a conviction on any of the three counts and also on the contention that certain evidence was erroneously admitted.
 

 The conviction was based on the testimony of Officer Richard E. Geon of the Los Angeles Police Department, assigned to the Administrative Vice Division. Officer Geon “is an expert in the way and manner in which bookmaking is conducted in Los Angeles County, including signs, symbols, language, and paraphernalia used therein.” Geon was permitted to testify, for purposes of probable cause only, that before the arrest he was told by his immediate superior that by dialing HU 3-7777, wagers could be made on horse races. Through the telephone company he found that number registered to 1616 Ingraham Street, apartment 102 in Los Angeles. He then went to that address, entered the hallway, and ascertained the location of apartment 102. From a public telephone in the hallway he dialed the above number. For purposes of establishing probable cause only, the following testimony was admitted: “ The Witness : The phone was answered by a male voice who stated, ‘Hello.’ At this time I said, ‘This is J.W. for 700.’ The male voice replied, ‘Just a minute. ’ After a short pause the male voice said, ‘Go ahead.’ I said, ‘In the second at Hollywood give me two across on That’s My Man, and two across on Solid Lad, and in the third give me two across on Pay Off and five to show on Unele Dibby. ’ I asked this person, ‘Did you get all of it?’ The male voice replied, ‘Yes.’ I stated that, ‘I will call you later,’ and I then hung up the phone.”
 

 Geon then joined his partner in forcing entry into the apartmént. They proceeded to the bedroom where Geon observed defendant and placed him under arrest. A subsequent geareh revealed two 3 by 5 pads with, ink notations, marked
 
 *119
 
 exhibits 1 and 4 and a National Daily Reporter, dated May 20, 1961, the date of the arrest, marked exhibit 3. Exhibit 2 was a handwriting exemplar with defendant’s handwritten name on it, the date May 20, 1961, and the initials R.F.K.
 

 With respect to exhibit 1 the officer testified as follows: “In my opinion this is a recordation of a wager, to wit, in the second race at Hollywood Park, the horse in the 6th handicapped position, $2.00 to win, $2.00 to place, $2.00 to show. I also observed the initials J.W. followed by the word for 700. Q. And in your opinion what is the meaning of that, sir? A. In my opinion J.W. would be the identification of a bettor wishing to place a wager on a horse race at Hollywood Park, and 700 would be the identification agent for whom the bettor was coming in.” Geon was then asked his opinion as to the relation of figures on exhibit 1 to the bets he placed over the telephone. Over defendant’s objection that the question assumed facts not in evidence, was incompetent, irrelevant, and immaterial, and called for surmise and conjecture, the officer was permitted to testify as follows: “In correlating these figures with the National Daily Reporter for May the 20th, 1961, and in interpreting these numerals they represent the identical coded figures of the purported wager which I placed over the telephone at this time. Mr. Kotchick : Q. And are you able to explain at this time, Officer Geon, which numbers here led you to arrive at this opinion that you have just stated? A. Well, these numbers, for example, 27 indicate that in the second race the horse in the 7th handicapped position, $2.00 to win, $2.00 to place, $2.00 to show, and directly below this the numerals 32 followed by the figures 2, 2, 2, indicate a $2.00 win, $2.00 place and $2.00 show wager in the third race, the horse in the second handicapped position. And below this the numerals 33, followed by the figures 5S indicate a $5.00 show wager on the horse in the third handicapped position in the third race. Q. And is this a track in the United States, Officer? A. Yes, sir, Hollywood Park.”
 

 Exhibit 3, the National Daily Reporter, was described as being used by bookmakers and bettors.
 

 Exhibit 4 was described as a list of agents with whom the bettors are doing business when they phone their bets. Officer Geon stated that the bettors refer to one of these agents when they call the number so that bookmakers can determine whether they are legitimate bettors. The witness then stated that in his opinion, exhibits 1, 3 and 4, when taken together, constitute bookmaking paraphernalia.
 

 
 *120
 
 Officer Geon also testified to the following: “I asked the defendant how long he had been a bookmaker. He replied that he had been taking bets for about eight days. I asked him how he got into the business. He stated that he had met a man in a bar who told him that he could make some extra money by taking bets over his telephone. ’ ’
 

 Following Officer Geon’s testimony it was stipulated that a handwriting expert would testify, if called, that defendant’s handwriting on exhibit 2 was made by the same person as the handwriting on exhibit 1.
 

 It should also be noted that no defense was presented, and “the failure of the defendant to deny or explain evidence presented against him, when it is in his power to do so, may be considered ... as tending to indicate the truth of such evidence, and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable.”
 
 (People
 
 v.
 
 Adamson,
 
 27 Cal.2d 478, 489 [165 P.2d 3].)
 

 Under subdivision 1 of section 337a, one who “engages in pool-selling or bookmaking, with or without writing, at any time or place” is punishable by imprisonment. Subdivision 2 makes it unlawful to keep or occupy an enclosure with paraphernalia for the purpose of recording or registering bets or purported bets. Subdivision 6 makes it unlawful to make or accept bets on races. The recent case of
 
 People
 
 v.
 
 Buckman,
 
 186 Cal.App.2d 38 [8 Cal.Rptr. 765], provides a complete answer to defendant’s contention that these charges were not supported by the evidence. In that case defendants were charged with violations of subdivisions 1, 2 and 4. Subdivision 4 makes it unlawful to record or register a bet. At page 49 the opinion states: “The evidence that Drugan and Chernock occupied an enclosure, a garage and residence respectively, with items consisting of betting markers, pencils, telephones and the like, for the purpose of recording or receiving bets; the nature, character and significance of the papers and equipment found on the premises and in their possession, established by the testimony of experts [citations] to be the customary methods and paraphernalia of persons engaged in bookmaking and recording or registering bets; the use of such equipment by defendants as that commonly used in such activities ; telephone conversations wherein the officers actually placed bets with Chernock and LaCroix who accepted and recorded same before and at the time of their arrest [citations] ; the presence of the defendants on the premises they
 
 *121
 
 are accused of occupying; and their admissions concerning their bookmaking activities, all point to the conclusion that Drugan and Chernock each had paraphernalia in his possession on the premises which he was occupying for the unlawful purpose denounced by section 337a; that each had engaged in bookmaking; and that each, including LaCroix, had received and recorded bets. [Citations.] ”
 

 With respect to subdivision 1, defendant points out that there was no testimony that the male voice answering the telephone call was that of defendant, nor was it established that defendant was the only person in the apartment, nor was there testimony that any “calls came into the apartment.” But in light of defendant’s occupancy of the apartment, the betting marker in his handwriting, and his admission, it cannot be contended successfully that such testimony would be essential to a conviction. It is also contended that some “activity” must be shown to constitute “making a betting book,” to distinguish the offense from that of possession of paraphernalia. The argument erroneously assumes that none was sufficiently demonstrated by the above evidence.
 

 Defendant’s argument with respect to subdivision 2, that the items found in the apartment do not constitute paraphernalia within the meaning of the statute is in conflict with Officer Geon’s expert testimony
 
 (People
 
 v.
 
 Buckman, supra).
 

 Defendant also points out that it was not established that it was defendant’s apartment. But the statute makes it an offense to keep
 
 or
 
 occupy an enclosure; occupancy is sufficient.
 
 (People
 
 v.
 
 Buckman, supra; People
 
 v.
 
 Cuda,
 
 178 Cal.App.2d 397, 414 [3 Cal.Rptr. 86];
 
 People
 
 v.
 
 Foreman,
 
 112 Cal.App.2d 616, 619 [246 P.2d 979].)
 

 Defendant’s argument on subdivision 6 erroneously asserts that there was no evidence that defendant received Geon’s telephone call. The marker in his handwriting, which according to Geon’s opinion represented the bet he placed over the telephone, together with defendant’s admission, adequately support the conclusion that defendant accepted a bet.
 

 Defendant’s remaining contention is that Geon’s testimony that in his opinion exhibit 1 represented the bet he placed over the telephone, was erroneously admitted at the preliminary hearing, is not timely. It will be recalled that it was stipulated that the cause was to be tried on the transcript of that hearing. In
 
 People
 
 v.
 
 Graves,
 
 84 Cal.App.2d 531, 535 [191 P.2d 32], it is said: “Appellant also contends
 
 *122
 
 that the trial court erred in receiving in evidence certain testimony which was included in the transcript of the preliminary examination. Upon stipulation, as above stated, the People’s ease as to appellant was submitted on the transcript of the testimony taken at the preliminary examination. That transcript shows, as above indicated, that the officer testified that appellant said he had been smoking opium for about a year, and that he had smoked opium with Pinkston six or eight times before. That transcript also shows that counsel (not present counsel) who represented appellant at the preliminary examination made a motion to strike out the testimony last above referred to on the ground that it was immaterial, and that the motion was denied. At the trial herein in the superior court, counsel for appellant did not object to that testimony or move to strike it out. Apparently it is appellant’s contention that even though he stipulated that the People’s case might be submitted upon the testimony taken at the preliminary examination, and even though at the trial he made no objection to or motion to strike out that testimony, the trial judge should have announced or in some manner indicated that he would not follow that particular ruling of the committing magistrate. There was no such responsibility on the part of the trial judge. It was the duty of appellant to object to such testimony as he deemed objectionable. The trial judge was entitled to rely, in the absence of an objection to particular testimony, upon the stipulation that the People’s case was submitted on the testimony taken at the preliminary examination. This contention of appellant is not sustained.” See also
 
 People
 
 v.
 
 Jackson,
 
 177 Cal.App.2d 181, 183 [1 Cal. Eptr. 857].
 

 There was no objection to this evidence at the trial.
 

 Judgment and order denying motion for new trial affirmed.
 

 Fox, P. J., and Herndon, J., concurred.