[Crim. No. 8500. Second Dist., Div. Two. Apr. 23, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT LEROY BIEHLER, Defendant and Appellant.

Bernard Lauer, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and C. A. Collins, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J.—Defendant was convicted of burglary (Pen. Code, § 459) in the second degree. He has appealed from the judgment.[1]

---

[1] In an earlier trial on the same information, defendant, along with several codefendants, was found guilty of the burglary charge contained herein (count IV) and also of the charge of robbery contained in count I of the information. These convictions were reversed by the District Court of Appeal in *People* v. *Biehler*, 198 Cal.App.2d 290 [17 Cal.Rptr. 862], on the ground the numerous offenses charged in the information were improperly consolidated for trial.

A retrial of defendant on the charge of robbery (count I) resulted

On August 4, 1960, Deputy Sheriff Foreman of the Sheriff's Firestone Station was called to 5000 East Clara Street in the City of Bell to investigate a suspected burglary of the previous night. This was the location of a business establishment known as Uncle Fred's Swap Shop that "generally dealt in used and antique weapons, swords, guns," etc. The officer had a conversation with the proprietor of the establishment and thereafter examined the premises. He found that a window on the west side of the building had been broken out. He also found that a gun display case of glass, inside the building, had been broken. There were stains, which appeared to be possibly dried blood stains, immediately inside the broken glass on the display case and on the floor inside the building. The hole in the broken window was approximately 21 by 13 inches. There were "numerous hand weapons, pistols," in the display case.

Deputy Sheriff Harold Turner, a fingerprint expert, went to this business establishment and made a search for latent fingerprints. He found prints on a piece of glass lying outside on the sidewalk below the broken window. In his opinion, the print taken from that piece of glass was the same as the left thumb on the fingerprint card of defendant.

Defendant was arrested about 10:30 p.m. on August 25 and taken to the Downey Police Station around midnight.

On August 29, Deputy Roy Jones had a conversation with defendant in which the officer asked the defendant if he broke the window to get into Uncle Fred's Swap Shop at Wilcox and Clara Streets. Defendant stated that he did. The officer asked defendant if the scar on his left arm was the place where he cut himself entering the building. Defendant said, "No"; that he had cut his thumb and it was that wound that bled. The officer told defendant that the victim had reported four guns stolen. Defendant stated that this was incorrect; that he had taken two [sic] guns — two .38 revolvers and a double-barrel shotgun. Defendant further stated that he took the guns across the street and placed them behind the fence that surrounded the gas station directly across the street from the location, where they were picked up by someone else. Defendant intimates that his statements to Officer Jones relative to breaking and entering this place were not free and voluntary in that he was greatly concerned about the well-being

in defendant's acquittal. He was retried on the burglary charge (count IV) a few days thereafter. He was convicted of second degree burglary. It is from this conviction that he has appealed.

of his mother and his former wife, with whom he had recently begun living again. He claims it was intimated that one or the other or both of them might be arrested on some charge relating to his asserted commission of this offense. Officer Jones denied making any such statements.

Initially, defendant unmeritoriously contends that the evidence is insufficient to establish the corpus delicti of burglary and that therefore his extrajudicial statements were inadmissible. The uncontradicted evidence clearly shows that a window in Uncle Fred's Swap Shop was broken; that a display case inside the shop was broken; that two or three guns were taken therefrom; and that someone had entered the shop and left blood stains therein. This evidence establishes that someone broke into and entered the shop and justifies the inference that it was with the intent to commit theft.

In *People* v. *Mehaffey*, 32 Cal.2d 535 [197 P.2d 12], the court points out at page 545, that to authorize the reception in evidence of confessions and extrajudicial statements of a defendant ". . . the prosecution is not required to establish the corpus delicti by proof as clear and convincing as is necessary to establish the fact of guilt; rather slight or prima facie proof is sufficient for such purpose. [Citations.]

It may be proved by circumstantial evidence and by inferences reasonably drawn therefrom. [Citations.] Direct or positive evidence is not essential [citations], nor is it necessary at this point to connect the defendant with the perpetration of the offense [citations]." Accord: *People* v. *Nankervis,* 183 Cal.App.2d 744, 749 [7 Cal.Rptr. 263].

Tested by these principles, there can be no doubt that the corpus delicti was sufficiently established to warrant the admission into evidence of defendant's extrajudicial statements.

Defendant's second contention is that the trial court committed reversible error by failing to give, on its own motion, a jury instruction relative to the necessity of proof of the corpus delicti independent of defendant's admission or confession. This point was decided adversely to defendant's position in *People* v. *Fox,* 126 Cal.App.2d 560 [272 P.2d 832] [hear. den.]. At page 570 the court stated: "It was not prejudicial error for the court to fail to give, on its own motion, an instruction that appellant's admissions should not be considered without first finding from other evidence the existence of the corpus delicti [citation]." Furthermore, it is apparent from the statement of the facts and our

404

previous discussion that prima facie proof of the corpus delicti. was established independently of defendant's extrajudicial statements. Therefore, the failure of the trial court to instruct on the necessity for independent proof of the corpus delicti was not in any event reversible error. (See *People* v. *Simon*, 107 Cal.App.2d 105, 122-123 [236 P.2d 855]; *People* v. *Holbrook*, 45 Cal.2d 228, 234 [288 P.2d 1].)

Defendant argues that the trial court unduly restricted the right of defendant to cross-examine Officer Jones (the investigating officer) who testified to the conversation he had with the defendant on August 29, at which time defendant admitted that he was the person involved in the burglary of Uncle Fred's Swap Shop. In particular, defendant's counsel sought to cross-examine Officer Jones with respect to conversations he assertedly had with defendant between August 26 and 29. On direct, the officer did not testify to having had any conversations with defendant during the period in question. Generally speaking, the scope of cross-examination is limited to the interrogation of the witness on matters concerning which he gave direct testimony. (Code Civ. Proc., § 2048; *People* v. *Watson*, 46 Cal.2d 818, 826 [299 P.2d 243]; *People* v. *Grayson*, 172 Cal.App.2d 372, 376 [341 P.2d 820].)

Since the officer had not testified to any prior conversations there was no basis for attacking his credibility on the theory of discrepancies in his direct and cross-examinations. Hence the defense was not entitled to cross-examine him on these earlier conversations unless it could show some relevancy between those conversations and the one on August 29. (*People* v. *Valles*, 197 Cal.App.2d 362, 370 [17 Cal.Rptr. 204].) And none of these earlier conversations could have any bearing upon the conversation of the 29th unless, perchance, something was said that might have tended to induce an involuntary confession in the conversation of the 29th. But on this point defendant was allowed to cross-examine Officer Jones. In that respect the reporter's transcript shows the following:

"Q. [By Defense Counsel] Isn't it true that you told him prior to the conversation on the 29th that in the event he didn't fess up to this crime, or confess to it, that you would throw his ex-wife and mother in jail?

"A. [By Officer Jones] No, sir, that is not true." And the reporter's transcript also reveals the following:

"Q. [By Defense Counsel] Did you attempt to get Mr.

Biehler to discuss the burglary by telling him that unless he did you would arrest his ex-wife and his mother?

"A. [By Officer Jones] No, sir."

Thus it appears that the trial court allowed cross-examination of the officer on the only matter which served to connect up the earlier conversations with the last one. There is nothing to indicate that the trial court abused its discretion in limiting the cross-examination of Officer Jones as it did. Nor does it appear that defendant suffered any prejudice by reason of such limitation. Defendant's reliance on *People* v. *Watson, supra,* and *People* v. *Whitehead,* 113 Cal.App.2d 43 [247 P.2d 717], is misplaced for they do not stand for the broad proposition for which he contends.

■ Defendant's final contention is that the trial court erred in failing to instruct the jury, on its own motion, regarding the effect which an illegal detention of the accused may have had on his extrajudicial statements.

The court gave CALJIC instruction No. 29 (rev.) defining a confession, and CALJIC No. 29-B Alternate (rev.) on when an admission or confession is voluntary, which reads as follows:

"A statement of a defendant relative to the offense charged is involuntary when it is obtained by any sort of violence or threats, or by any direct or implied promises of immunity or benefit, or by any improper influence which might induce in the mind of the defendant the belief or hope that he would gain or benefit or be better off by making a statement, and when the defendant makes such statement as the result of any such inducement originating with a law enforcement officer. But, even though a statement is made under a hope or belief of benefit, it will not be involuntary if such hope or benefit originated in the mind of the defendant solely, or was induced solely by the advice or counsel of a relative, attorney, or other person not connected with law enforcement.

"The fact that a defendant was under arrest at the time he made a statement or that he was not at the time represented by counsel or that he was not told that any statement he might make could or would be used against him or that he was told that others had made statements implicating him in the crime, will not render such statement involuntary.

"Where there is a conflict in the evidence, it is for the jury to decide whether the statement was made voluntarily or involuntarily, and in making this determination the jury

should govern its action by the same rules as to weighing the evidence and credibility of witnesses as apply to the determination of any of the issues in the case.''

The court also instructed the jury that evidence of oral admission is to be viewed with caution. Defendant did not request any further instruction on this aspect of his defense. If he desired any amplification touching on the voluntariness of his confession, it was incumbent upon him to make such a request. (*People* v. *Snyder,* 74 Cal.App. 138, 144 [239 P. 705]; *People* v. *Grasso,* 142 Cal.App.2d 407, 417 [298 P.2d 131]; *People* v. *Cummings,* 7 Cal.App.2d 406, 408 [46 P.2d 778].)

Defendant's reliance on *People* v. *Speaks,* 156 Cal.App.2d 25 [319 P.2d 709], for the proposition that an illegal detention is relevant circumstantial evidence in the inquiry as to physical or psychological coercion is not persuasive. That case does not go so far as to require the trial court to instruct on that proposition or to hold that failure of the trial court to instruct, *sua sponte,* on that proposition is reversible error.

Defendant seeks to excuse his failure to request the desired instruction at this trial as due to the fact that the court refused to give such an instruction in the earlier robbery trial. He inferentially makes the contention that the desired instruction was in fact not requested because an actual request for the instruction would have been in vain, in light of the court's ruling at the previous trial. Defendant cites no authority to support his proposition that where an instruction is requested and refused in one trial such refusal may be used as a basis for failing to request the instruction in a later trial. The following cases, by analogy, indicate the lack of merit in defendant's proposition. In *People* v. *Graves,* 84 Cal.App.2d 531 [191 P.2d 32], it was held that where the prosecution submitted its case on the transcript of the preliminary hearing, a motion to strike evidence made at the preliminary hearing must be made again in the trial court or it is waived. (P. 535) This principle has been approved in *People* v. *Jackson,* 177 Cal.App.2d 181, 183 [1 Cal.Rptr. 857], and in *People* v. *Miller,* 205 Cal.App.2d 116, 121-122 [22 Cal.Rptr. 786]. Defendant's proposition would tend to complicate records on appeal and create uncertainty whereas such records should be simple and clear in order to facilitate the proper administration of justice.

In this connection defendant makes the ingenious suggestion that the desired instruction was constructively requested

since it had been submitted at the previous trial. There is no merit whatever in this suggestion, and it is inconsistent with his theory that the trial court should have given such an instruction on its own motion.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.