PATROSSO, J.
Defendant was convicted upon two counts of violating Health and Safety Code, section 11225, in that, upon two different occasions, he dispensed a narcotic, demerol, without making a record of that transaction as required by the section. Imposition of sentence was suspended and defendant placed upon probation. Defendant challenges- the sufficiency of the evidence to sustain the conviction, and also assigns numerous errors in the trial court’s rulings on evidence and in the instructions to the jury.
We find it unnecessary, however, to consider in detail all of the numerous errors assigned, many of which appear to have been well taken, for the reason that we have concluded not only that the trial court committed á fatal error in the instructions to the jury, but that, if the word “dispenses” as used in section 11225, comprehends one who sells or furnishes a narcotic to another without a prescription as required by section 11500, Health and Safety Code,[1] there is no competent *Supp. 913 evidence that the defendant failed to make a record of any narcotic sold or furnished by him, with or without a prescription. If the evidence discloses that the defendant was guilty of any crime, it was not that of violating the section of which he was charged.
The evidence discloses that Brie Pharmacy, Inc. is a corporation operating a pharmacy, of which corporation defendant is a stockholder and president; the other stockholders and officers being his wife and mother-in-law. Defendant is the only permanent pharmacist employed by the corporation and its other employees consist of a relief pharmacist, a drug and cosmetic clerk and a stock boy.
During the period of March 21, 1955 (at which time it had no demerol in stock) to January 1, 1956, the corporation purchased and received from a wholesale drug concern 43 vials (30 cc) of demerol, and when its records were checked by narcotics inspectors on February 8, 1956, it was found that there were on hand eight vials and only 26 prescriptions therefor, which indicated a shortage of nine vials, for which there were no prescriptions on file. All of this evidence with respect to the quantity of demerol purchased, the amount remaining on hand, and the number of prescriptions, was received over the persistent objections of the defendant. There is no evidence, however, that defendant either dispensed, sold, or gave away any of the missing demerol, except as hereinafter stated.
We pause here to point out that the trial judge throughout the trial took the position and so stated in effect, on numerous occasions in the presence of the jury that the corporation and the defendant were one and the same; that a corporation can act only through its agents; that “the store was in his possession, he [defendant] works for it.” Moreover, in its instructions to the jury the trial court read to it the *Supp. 914 provisions of section 11227 of the Health and Safety Code which reads as follows: “In a prosecution under this division proof that a defendant received or has had in his possession at any time a greater amount of narcotics than is accounted for by any record required by law or that the amount of narcotics possessed by a defendant is a lesser amount than is accounted for by any record required by law is prima facie evidence of guilt.”
It'should be noted that the “division” referred to in the preceding section is division 10 which includes numerous sections defining a great variety of different offenses other than that specified in section 11225.
The jury could only understand from this instruction that proof of a shortage in the narcotics accounts of the corporation of which defendant was a stockholder, officer and employee operated to establish prima facie evidence of defendant’s guilt of the crime charged, namely that he (defendant) dispensed a narcotic without making the prescribed record thereof. However proper the presumption declared by section 11227 •may be as applied to one who in his individual capacity possesses narcotics, it is unreasonable and indeed unconstitutional if applied against a corporate officer or employee of a corporation upon the hypothesis that the corporation’s possession of the narcotics in his possession, at least in the absence of proof that he and he alone had access thereto, or that the shortage was occasioned by some act of his, and of this there is no evidence here as will later appear. As said in Mayes v. State (1942), 145 Tex. Crim. 295 [167 S.W.2d 745, 746] : “ (C)ertainly a law should not be upheld which would make an act prima facie evidence of a necessary criminative fact against one accused of crime when such party had no control over nor connection with the act in question.” And we cannot believe that the Legislature so intended to provide.
If the law were as the court told the jury, it would mean that every employee of a drugstore, however numerous they might be, could be convicted of violating section 11225 without any evidence that any of them had ever dispensed a narcotic by the simple device of proving that the amount of narcotics possessed by their corporate employer was “a lesser amount than is accounted for by any record required by law.” This, of course, is not the law. “An officer of a corporation is not criminally answerable for any act of a corporation in which he is not personally a participant.” (People v. Inter *Supp. 915 national Steel Corp. (1951), 102 Cal.App.2d Supp. 935, 943 [226 P.2d 587], and cases there cited.)
The evidence here is to the effect that the corporation’s narcotics were kept in a cabinet which was locked but the key to which was kept on top of the cabinet, and that this cabinet as well as the key thereto were readily accessible not only to the other employees but to other persons who might be in the store from time to time. Therefore, the fact that a certain quantity of narcotics was missing or unaccounted for by prescriptions on file would in and of itself no more serve to prove that defendant had dispensed or disposed of the same than it would tend to establish that they were dispensed by some other employee.
While the error necessarily requires a reversal, in view of the possibility of a new trial, we shall briefly examine the other evidence adduced to establish the specific charge contained in each of the two counts of the complaint.
The first count relates to the so-called Petrosini matter. The People adduced evidence to the effect that on January 22, 1956, a peace officer was called to a given address relative to an “unnatural death” where he discovered the body of a dead woman identified as Mary Petrosini. The witness then identified an empty cardboard box with the label “Demerol” thereon (Ex. 2); a similar empty box and empty vial similarly labeled “Demerol” (Ex. 3) and another similar empty vial labeled the same (Ex. 4) as having been found by him upon the premises above referred to. No proof was adduced that any of these items had ever been in the possession of the Eric Pharmacy except that the box identified as Exhibit 3 contained thereon in handwriting the notation “Pom” which was admittedly the cost code word of the Eric Pharmacy. Each of these exhibits was admitted over the objections of the defendant, not only without any proof that, except as to Exhibit 3, they were ever in the possession of the Eric Pharmacy, but with no proof whatever that defendant had dispensed or furnished the same to Mary Petrosini.
The court therefore erred in admitting the same in evidence, and in refusing to grant defendant’s motion made before the close of the trial to strike the same. And the foregoing is all of the evidence to be found in the record adduced to prove the first count that defendant dispensed demerol except the fact that Mrs. Petrosini was a nurse and was frequently in the Eric Pharmacy, and that when the narcotic inspectors called upon the defendant, he according to their testimony, *Supp. 916 said “I suppose you want to see me in connection with the Petrosini matter.” This, however, is wholly insufficient to sustain a conviction of the crime charged. There is testimony that Petrosini had stolen demerol from other drugstores in the vicinity and defendant may well have been concerned, as he stated, that some of the missing demerol of the Eric Pharmacy may have been accounted for by thefts by Petrosini.
Count II of the complaint relates to the so-called Wadleigh matter, the evidence concerning which is highly conflicting, but we shall state the same in the light most favorable to the People.
Mrs. Wadleigh is a nurse employed by a Dr. Rich who maintains his office in the vicinity of the Erie Pharmacy. According to her testimony, about the middle of January she took a prescription written by Dr. Rich for a bottle of demerol to the defendant, which she said Dr. Rich had received the night before, and at the same time stated to defendant that Dr. Rich had not yet received the “state application blanks ” for demerol in the office, and requested a bottle so they might have it for the office, telling defendant it would be covered by a prescription “as soon as the blanks arrived.” Thereupon, defendant delivered a bottle to her without a prescription, but there is no evidence that he did not make a record of this.
Sometime later, defendant called Mrs. Wadleigh .inquiring as to why he had not received the “prescription” and she replied they had not received their “state forms” and defendant then asked that she return the bottle which she promised to do. Later, she returned a bottle of demerol to defendant stating it was the one previously delivered to her. However, unknown to the defendant, the bottle returned was not the one she had received from defendant, but one which she had received from another pharmacy upon a prescription to which she had forged Dr. Rich’s name, from which she had removed the label applied to the outside of the bottle by the pharmacist from whom she had obtained it and put it in the box which had contained the bottle .obtained from defendant.
The foregoing testimony may have supported a conviction of defendant for selling, furnishing, .or giving away a narcotic without a legal written prescription in violation of Health and Safety Code, section 11500 (assuming, without deciding, that this section, applies to a sale to a physician, as to whiph see section 11570) but defendant was not charged with .a violation of section 11500, although a reading of the tran *Supp. 917 script suggests that both the trial judge and counsel for the People seemingly entertained the erroneous view that this was the case.
The order appealed from is reversed.
Bishop, P. J., concurred.

We mention this because the trial court instructed the jury that the word “dispenses” as used in section 11225 had the meaning set forth in Business and Professions Code, section 4214, formerly Health and Safety Code section 29003.6 found in division 22 thereof, namely: “ ‘Dispense’ as used in this division shall mean the furnishing of the medicines referred to in this act upon the legal prescription from a physician. ...” The section which defendant is charged with violating (11225) is not found in the Business and Professions Code nor was it in division 22 of the Health and Safety Code, but in division 10 thereof, and hence without application to a charge laid under section 11225. However, if the trial court was correct in so defining the word “dispenses” as used in section 11225, a reversal would be required for there is not a scintilla of evidence that defendant dispensed, sold or *Supp. 913 furnished a narcotic upon a legal prescription of which he did not make a record. By the foregoing, we do not desire to be understood as deciding that the definition of "dispense” as used in Business and Professions Code section 4214 as given by the trial court was erroneous. That it is there used in this restricted sense finds some support in the fact that the furnishing, sale or gift of a narcotic except upon a legal prescription is made an independent crime by section 11500 of Health and Safety Code without regard to whether the one who furnishes, sells or donates the same makes a record thereof. As indicated above, however, we shall assume, for the purposes of this opinion, that the word "dispenses” as used in section 11225 is sufficiently comprehensive to include every act by which a narcotic is transferred from the possession of one person to another.