[Crim. No. 1810.   Fourth Dist.   Aug. 1, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. EUNICE JACQUELINE MARSCHALK, Defendant and Appellant.

Earl H. Maas, Jr., under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

GRIFFIN, P. J.—Defendant and appellant was charged with and convicted of unlawful possession of a narcotic (demerol), in violation of Health and Safety Code, section 11500. Probation was granted on condition of payment of a $250 fine and other restrictions.

## FACTS

About 11 p. m. on April 10, 1961, defendant was a nurse in charge, but not a registered nurse, at the Guest House, a private mental hospital in Chula Vista. She was found in an upstairs bathroom, her pupils dilated, with blood on her uniform. A bloody empty syringe was found lying on the wash basin. A bloody tourniquet protruded from her uniform

pocket. Her speech was incoherent and she was unsteady on her feet. When someone observed her arm, she pulled it away. There were four puncture marks on the upper and lower portions of her arm. Defendant had made no entry in the record book in reference to administering any such narcotic to anyone that day. She named a Mrs. Steel, but there was no such patient. The drug room of the hospital was checked and it was discovered that a new bottle of demerol was open. The drug was kept in a locked closet. The nurse in charge, in the absence of doctors and the business manager, keeps the key. Seven cc's of demerol were missing from the bottle. Demerol is generally used for extreme pain. It is given intramuscularly or orally by tablet. It is not generally given by being introduced into the vein. A shot of demerol injected into a vein would have a stronger and faster effect than if put into a muscle. One patient in the hospital, a Mr. Snodgrass, had a standing order for demerol. The nurses did not have permission to administer a narcotic without instructions from a physician. The Guest House does not have a registered nurse for every shift. The president of the corporation which owns the Guest House and the medical director authorize the charge nurses to have access to narcotics. There is no policy that personnel can use demerol for themselves whenever they want to without a doctor's orders. Defendant was told that there was a fresh bottle of demerol in the case, and on her shift, as charge nurse, she had a key to the narcotics locker. She had possession of a narcotic, demerol, so that she could give Mr. Snodgrass a shot if he needed it. Defendant appeared to be normal at the time she came to work on April 10. She was later charged, under Health and Safety Code, section 11500, with unlawful possession of a narcotic. After her arrest, she signed a written statement, which was in evidence. It reads in part:

". . . on April the 10th, 1961, at approximately 8 :30 p. m., [I] injected myself with approximately 2 cc of demerol. In the process of this administration I wasted approximately two more cc from the 30 cc vial of the medical supply from the Guest House where I was working on the 3 :00 to 11 :00 shift. . . . At the time of doing this terrible thing I was confused and in very much pain due to a sinus headache attack and persistent left kidney pain. I realized immediately afterwards that I was wrong to take it upon myself to administer a drug this way. . . . This is the first time in my whole

life I have been guilty of such a horrible act as injecting a drug to myself. . . . signed: Eunice Jacqueline Marschalk.''

The bottle labeled ''demerol'' did contain demerol, according to an expert forensic chemist.

Evidence was produced that in August of 1959, defendant was employed as a nurse by a doctor in Long Beach. This doctor detected a shortage of 50 ampules of demerol. He checked the bathroom and found used needles on the floor. In the trash barrel there were wet towels with blood and syringes, some partially full of blood. Defendant was present but did not seem in contact with reality. She appeared to be partially under the influence of alcohol, but there was no odor of alcohol on her breath. The doctor accused her of taking the demerol. He found four long scratches on her right arm and there were approximately 15 or 20 needle marks. Her arm looked as if it had been beaten. Her legs were in the same condition. There were 25 to 30 needle marks on each limb. Defendant was discharged from his employ.

### DEFENSE

Defendant concedes that she did administer a shot of demerol to herself at the time indicated, but argues that she had the demerol in her possession only during her stay on duty and her permission to have possession of the narcotic was because of her authority as head nurse, given to her by the physician in charge. She cites authority for her right to possession of the demerol as being Health and Safety Code, section 11331.5, which indicates that any hospital which does not employ a resident pharmacist, and which is under the supervision of a licensed physician, may purchase narcotics on federal order forms for said institution under the name of said hospital, and that the supply is to be made available to a registered nurse for administration to patients in emergency cases, upon the direction of a licensed physician. Defendant claims that although that section only allows such supply to be available to a registered nurse, the narcotics enforcement agency did not enforce this provision because of the difficulty in obtaining registered nurses, and accordingly no law was violated. We see little merit in this argument. Even if true, this would not legally authorize the defendant to appropriate such narcotic for her own use and for the purpose of the injection indicated. ▮▮ It is settled that the privilege of possessing a narcotic must be shown affirmatively by the defendant. (*People* v. *Bill,* 140 Cal.App.

389, 392 [35 P.2d 645].) ■ It is true that the general statutory plan is to grant certain privileges to physicians, pharmacists and others engaged in the care of the sick, in respect to the use of otherwise unlawful drugs. These privileges, however, are not absolute. (*People* v. *Nunn,* 46 Cal.2d 460, 467 [296 P.2d 813].) The statutes and cases carefully circumscribe the possession and use of narcotics by such privileged persons to the purpose of the privilege. Defendant offered an instruction based on this theory, which was properly refused by the trial court. ■ When the handling of the narcotic is for a purpose not connected with the privilege, the possession is unlawful. (*People* v. *Ard,* 25 Cal. App.2d 630 [78 P.2d 254] ; *People* v. *Wallace,* 109 Cal.App.2d 676 [241 P.2d 264] ; *People* v. *Silver,* 176 Cal.App.2d 377 [1 Cal.Rptr. 179].)

■ The court also refused defendant's requested instruction under Penal Code, section 26, subdivision 4, to the effect that all persons are capable of committing crime except those belonging to the following classes: ''Four—Persons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent.''

Defendant claims that she was laboring under a mistake of fact, because she believed the head of the Guest House gave her authority to have possession of the narcotic even though she was not a registered nurse, and accordingly there was no criminal intent. A mistake of law rather than a mistake of fact, if any, appears in the instant case. It is the general rule that ignorance of the law is no excuse. The prosecution, during the trial and in its argument to the jury, stated that it did not contend that defendant was guilty of the charge because she was not a registered nurse. The contention was that she was in possession of the narcotic illegally because she did knowingly convert it to her own illegal use. The evidence so indicates. Defendant's own testimony shows that there was no mistake of fact about her right to take it and to use it for herself. She plainly said she knew it was wrong and at the time she took the demerol she knew she would use it on herself. Even if it was error to refuse to give the proffered instruction, we see no prejudicial error in such refusal. (Const., art. VI, § 4½; *People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243].)

We conclude that, after an examination of the entire cause, including the evidence, it is not reasonably probable that a result more favorable to the appealing party would have been

reached had the instruction been given. (*People* v. *Winston*, 46 Cal.2d 151 [293 P.2d 40].)

■ Lastly, counsel for defendant makes the very unique argument that defendant was guilty of no violation of Health and Safety Code, section 11500, because of her claimed legal possession of the narcotic, but was only guilty, if at all, of violation of Health and Safety Code, section 11167, which provides that no person shall prescribe, administer or furnish a narcotic to himself, and that a violation of that section would be only a misdemeanor. Citing Health and Safety Code, section 11716.

Health and Safety Code, section 11500, does provide a penalty for illegal possession. The fact situation of illegal possession, coupled with illegal administration, is common. In *People* v. *Ard, supra,* 25 Cal.App.2d 630, a nurse retained narcotics for a month after the death of the patient. The court held that although possession had been lawfully acquired during the life of the patient, there was no authority for possession after the death of the patient and the possession was unlawful. In *People* v. *Silver, supra,* 176 Cal.App.2d 377, a pharmacist retained some drugs at home for possible emergency purposes after he had sold his pharmacy. This court said that a pharmacist may lawfully possess narcotics in order to sell them, but concluded that no statute authorized his possession except for the purposes stated in the statute. In the instant case, the prosecution relied upon proof of unlawful possession just prior to the administration. The manner of obtaining the narcotic and its subsequent use clearly support the jury's verdict that the defendant was guilty as charged.

Judgment and order denying new trial affirmed.

Shepard, J., and Coughlin, J., concurred.