[Crim. No. 12349. Second Dist., Div. Five. May 2, 1967.]

THE PEOPLE, Plaintiff and Appellant, v. OSCAR BERNARD KESSLER, Defendant and Respondent.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Plaintiff and Appellant.

Howard E. Beckler for Defendant and Respondent.

HUFSTEDLER, J.—The People appeal from an order dated March 15, 1966, granting respondent Kessler's motion to set aside and to dismiss the information against him pursuant to section 995 of the Penal Code. Kessler and his codefendants were charged with violating sections 11911 (unlawful possession for sale of restricted dangerous drug) and 11912 (unlawful sale of restricted dangerous drug) of the Health and Safety Code, for acts alleged to have occurred on November 12 and November 23, 1965. The restricted dangerous drugs involved were amphetamine sulphate, also known as benzedrine, and barbituric acid, namely seco-barbital sodium, also known as seconal.

The appeal presents the question: Is a licensed drug wholesaler who sells or possesses for sale restricted dangerous drugs which are not in stock in correctly labeled containers, subject to prosecution for a felony under sections 11911 and 11912 of the Health and Safety Code, or is he subject to prosecution solely for a misdemeanor under the provisions of sections 4382 and 4393 of the Business and Professions Code?

*Summary of the Evidence*

The charges in the information pertain to three alleged sales transactions involving dangerous drugs, benzedrine and seconal, in which Kessler and his codefendants (Caliman, Copeland, Scott and Fisher) participated, occurring on November 12 and November 23, 1965. The sufficiency of the evidence to bind over Kessler for trial is not challenged, except insofar as that evidence bears upon his claim that he is not subject to prosecution under sections 11911 and 11912 of the Health and Safety Code.

A brief summary of the evidence follows:

On March 12, 1965, Caliman and Copeland met in a Rexall parking lot. The two men conversed, Copeland handed money to Caliman, and Caliman drove away in Copeland's Pontiac automobile. At about the same time Caliman and Copeland

met each other, Kessler was observed parking his Cadillac in front of a garage at 303½ North Hamel. He unlocked and entered the garage, removed a cardboard box and put it in the trunk of his car. Kessler then drove to a Ralph's Market parking lot, entered the store and returned with an empty Eastside beer cardboard case. Caliman drove into the Ralph's parking lot, parked the Pontiac next to Kessler's Cadillac. Caliman walked to the rear of the Cadillac where Kessler was standing. Kessler opened the trunk of the Cadillac, removed several brown glass jars from the trunk and placed the jars in the Eastside beer case. Caliman put the case and its contents into the trunk of the Pontiac, talked with Kessler and handed Kessler a quantity of money. Caliman drove back to the Rexall lot and returned the car to Copeland, who drove away. Copeland was stopped, arrested, and the car was searched shortly thereafter. Inside the trunk was found the Eastside beer carton containing 10 glass jars, each holding about 1,000 benzedrine pills.

Other charges in the information involve the same *modus operandi,* although the roles of Caliman and Copeland were sometimes played by other actors named as codefendants, and sometimes the jars contained seconal pills instead of benzedrine pills.

On November 23, 1965, the garage at 303½ North Hamel was searched pursuant to a search warrant. Kessler was in the garage leaning over a large steamer trunk into which he was placing jars. He was arrested and on his person were found keys which opened the garage and the steamer trunk locks. Cardboard boxes containing unlabeled jars filled with thousands of benzedrine and seconal pills were also found in the garage.

The parties stipulated at the preliminary hearing that Kessler was a "licensed wholesale pharmacist in the State of California . . . [having] a registration valid and in effect . . . to possess and furnish hypnotic drugs and dangerous drugs."

*Information Properly Filed Under Health
and Safety Code Sections 11911 and 11912*

Kessler contends that a licensed wholesaler of dangerous drugs cannot be prosecuted for violating sections 11911 and 11912 of the Health and Safety Code, because section 4393 of the Business and Professions Code, forbidding a wholesaler to furnish drugs to unauthorized persons, constitutes a special statute spplicable to him, which operates to the exclusion of

sections 11911 and 11912 of the Health and Safety Code.[1] Kessler has misconceived the statutory scheme. Section 4393 is a general statute and sections 11911 and 11912 of the Health and Safety Code are special statutes penalizing his unlawful traffic in seconal and benzedrine.

 We hold that a drug wholesaler who possesses dangerous drugs, including amphetamine (*e.g.*, benzedrine) or hypnotic drugs (*e.g.*, seconal) which are not in stock in correctly labeled containers, or who sells such drugs without a proper prescription or authorized purchase order is not chargeable with a misdemeanor under any section of the Business and Professions Code, but is chargeable with a felony pursuant to sections 11911 and 11912 of the Health and Safety Code.

The legislative intent to penalize violations of those portions of the dangerous drug statutes (Bus. & Prof. Code, ch. 9, art. 8) dealing with hypnotic drugs (seconal) and amphetamine (benzedrine) compounds (art. 8, §§ 4227, 4230) under the provisions of division 10.5 of the Health and Safety Code (including §§ 11911 and 11912) and not under section 4393 of article 12 of the Business and Professions Code, is demonstrated by the structure of chapter 9 and by the language and the legislative history of the relevant code sections.

Chapter 9 of the Business and Professions Code, entitled "Pharmacy," is divided into 13 articles. Within each article are grouped statutes which relate to the subject matter of that article. The subject matter of some of the articles has general application throughout the chapter. For example, article 2 contains general definitions and article 12 (including §§ 4382, 4393) contains prohibitions and offenses against the chapter generally. The subject matter of other chapters is special; for example, article 7, "Poisons," and article 8, "Dangerous Drugs." The definition of the term "drug" is found in section 4031[2] of article 2, which applies throughout the chapter

---

[1]Section 11911 of the Health & Saf. Code proscribes possession for sale of any restricted dangerous drugs, except as otherwise provided in article 8 of chapter 9 of the Bus. & Prof. Code. Section 4393 of article 12 forbids a wholesaler to "furnish" any drugs to any unauthorized person. Even if "any drugs" in § 4393 includes dangerous drugs, § 4393 and § 11911 do not duplicate or conflict with one another, because one who possesses a drug for sale does not necessarily "furnish" a drug. Section 4048.5 of article 12 provides: " 'Furnish' means to supply by any means, by sale or otherwise."

[2]Section 4031 provides: " 'Drug' means (1) articles recognized in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement of any of them; (2) articles intended for use in the diag-

"unless otherwise indicated" (§ 4030³). The general definition of drug is inapplicable to article 8, which contains a specific definition of dangerous drugs. Section 4211 of article 8 defines "dangerous drug" as any drug unsafe for self-medication and includes: "(a) Any hypnotic drug. 'Hypnotic drug' includes . . . barbituric acid derivatives . . . or any compounds or mixtures or preparations that may be used for producing hypnotic effects . . . (c) Amphetamine . . . or compounds or mixtures thereof . . . (1) Hypnotic drugs when combined and compounded with nonhypnotic drugs." Section 4211 was not amended in 1965.

Of the dangerous drugs defined in section 4211 the Legislature has selected two kinds of drugs which are subjected to more stringent control than all other dangerous drugs; namely, hypnotic drugs (e.g., seconal) and those drugs described in subsection (c) of section 4211 (e.g., benzedrine). Persons who furnish hypnotic drugs must have special licenses and must use special order forms (§§ 4222, 4223, 4224). Additional restrictions are placed upon prescriptions for both hypnotic drugs and amphetamine. (§ 4229.) Section 4227 of article 8, as amended in 1965,[4] and section 4230,[5] dealing

nosis, cure, mitigation, treatment or prevention of disease in man or other animals; (3) articles (other than food) intended to affect the structure or any function of the body of man or other animals; (4) articles intended for use as a component of any article specified in clause (1), (2), or (3)."

[3]Section 4030 provides: "For the purposes of this chapter, the definitions of the terms in this article shall govern the construction of the provisions of this chapter, unless otherwise indicated."

[4]"No person shall furnish any dangerous drug, other than any hypnotic drug, except upon the prescription of a physician, dentist, podiatrist or veterinarian.

"The provisions of this section do not apply to the furnishing of any dangerous drug, other than any hypnotic drug, by a manufacturer or wholesaler or pharmacy to each other or to a physician, dentist, podiatrist or veterinarian or to a laboratory under sales and purchase records that correctly give the date, the names and addresses of the supplier and the buyer, the drug and its quantity.

"No person shall furnish any hypnotic drug except upon the prescription of a physician, dentist, podiatrist or veterinarian, or upon the receipt of a properly executed official hypnotic drug purchase order form.

"A record of the hypnotic drug administered by any person exempt under Section 4225 shall be kept stating the date, name and address of the patient, name and amount of the drug administered. The provisions of this section with respect to the keeping of records do not apply when hypnotic drugs are combined or compounded with medicinal drugs which render such combination or compound unfit for hypnotic use. "

[5]"No person shall have in possession any hypnotic drug or any preparation included in subdivision (c) of Section 4211 except that furnished to such person upon the prescription of a physician, dentist,

respectively with furnishing and possessing dangerous drugs, likewise distinguish hypnotic drugs and amphetamine (benzedrine) from other dangerous drugs. In terms applicable here, sections 4227 and 4230 forbid a wholesaler[6] to possess or to furnish[7] seconal or benzedrine unless the drugs are in stock in correctly labeled containers or are possessed or furnished pursuant to an authorized prescription or authorized purchase order form.

The intent to prescribe different, and more severe, penalties for violating the statutes controlling possession and distribution of hypnotic drugs and amphetamine is evidenced by the language and legislative history of section 4235 of article 8 and sections 11911 and 11912 of the Health and Safety Code.

Prior to the revision of article 8 in 1965, the article contained four penal provisions: section 4233 (violation of hypnotic drug provisions of article 8, a misdemeanor[8]); section

---

chiropodist, or veterinarian. The provisions of this section do not apply to the possession of any hypnotic drug by a manufacturer, or wholesaler or a pharmacy or physician or chiropodist or dentist or veterinarian or laboratory when in stock in containers correctly labeled with the name and address of the supplier or producer and which has been procured under the hypnotic license issued to them; nor do the provisions of this section apply to the possession of any drug defined in subdivision (c) of Section 4211 by a manufacturer or wholesaler or a pharmacy or physician or chiropodist or dentist or veterinarian or laboratory when in stock in containers correctly labeled with the name and address of the supplier or producer.''

[6] ''Wholesaler' means a person who supplies drugs that he himself has not derived, produced or prepared, on sales orders for resale but not on prescriptions. Every wholesaler shall maintain an established place of business, shall keep purchase and sales records and shall be registered with the board.'' (§ 4218.)

[7] ''No person shall furnish any dangerous drug, other than any hypnotic drug, except upon the prescription of a physician, dentist, podiatrist or veterinarian.

''The provisions of this section do not apply to the furnishing of any dangerous drug, other than any hypnotic drug, by a manufacturer or wholesaler or pharmacy to each other or to a physician, dentist, podiatrist or veterinarian or to a laboratory under sales and purchase records that correctly give the date, the names and addresses of the supplier and the buyer, the drug and its quantity.

''No person shall dispense any hypnotic drug except upon the prescription of a physician, dentist, podiatrist or veterinarian, or upon the receipt of a properly executed official hypnotic drug purchase order form.

''A record of the hypnotic drug administered by any person exempt under Section 4225 shall be kept stating the date, name and address of the patient, name and amount of the drug administered. The provisions of this section with respect to the keeping of records do not apply when hypnotic drugs are combined or compounded with medicinal drugs which render such combination or compound unfit for hypnotic use.'' (§ 4227.)

[8] ''Every person who violates any provision of this article, with respect to any hypnotic drug is guilty of a misdemeanor punishable by a fine of

4234 (furnishing dangerous drug to minor, a felony) ; section 4235 (violation of article 8 in respect of dangerous drugs other than hypnotics, a misdemeanor[9]) ; and section 4237 (forgery of prescription for dangerous drug, a misdemeanor). In 1965, in one bill (Senate Bill No. 381), the Legislature added division 10.5 to the Health and Safety Code (§§ 11901, 11903, 11910-11915) and amended the statutes found in article 8 of the Business and Professions Code. Section 4233 (hypnotic drug violation, a misdemeanor) was repealed. Section 4234 was amended.[10] Section 4235 (the former general dangerous drug misdemeanor provision) was amended to read: "Every person who violates any provision of this article . . . other than . . . *Section 4230 or Section 4227 insofar as such sections relate to hypnotic drugs or any preparation included in subdivision (c) of Section 4211*, is guilty of a misdemeanor." [The deleted portions of former section 4235 are indicated by asterisks and the added language is italicized.[11]]

The Legislature interwove the provisions of division 10.5 of the Health and Safety Code with the revised provisions of article 8. Section 11911 of the Health and Safety Code in pertinent part provides: "Except as otherwise provided in Article 8 (commencing with Section 4210) Chapter 9, Division 2 of the Business and Professions Code, every person who possesses for sale any restricted dangerous drug shall be punished by imprisonment in the state prison for not less than one year nor more than three years, or by imprisonment in the

---

not less than one hundred dollars ($100) nor more than five hundred dollars ($500), or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment. Upon a conviction involving a violation respecting hypnotics, the board which granted a professional license to any such defaulter may, institute and maintain proceedings for the revocation or suspension of such license. The proceedings shall be conducted in accordance with the Administrative Procedure Act, Chapter 5 of Part 1 of Division 3 of Title 2 of the Government Code, and such board shall have all of the powers granted therein."

[9] "Every person who violates any provision of this article with respect to any dangerous drug other than a hypnotic drug is guilty of a misdemeanor."

[10] Section 4234 provides: "Every person who violates any provision of this article *with respect to dangerous drugs other than hypnotics or any preparation included in subdivision (c) of Section 4211* by use of a minor as an agent is guilty of a felony." [Italicized language added in 1965, ch. 2030, § 3, p. 4605.]

[11] Stats. 1965, ch. 2030, § 4, p. 4605. At the same time in the same legislative session by a bill originating in the Assembly (AB 1875), other changes were made in article 8, including the rewriting of section 4227, and section 4393 of article 12 was likewise amended. (Stats. 1965, ch. 1822, p. 4205.)

county jail not exceeding one year." Section 11912 of the Health and Safety Code provides in pertinent part: "Except as otherwise provided in Article 8 (commencing with Section 4210), Chapter 9, Division 2 of the Business and Professions Code, every person who . . . sells . . . , furnishes, . . . or offers to . . . sell, . . . furnish, . . . any restricted dangerous drug except upon the prescription of a physician, dentist, podiatrist, or veterinarian licensed to practice in this state shall be punished by imprisonment in the state prison for not less than one year nor more than five years, or by imprisonment in the county jail not exceeding one year." Section 11901 of the Health and Safety Code defines "restricted dangerous drugs" as including " (a) 'Hypnotic drug' including . . . barbituric acid derivatives, . . . or any compounds or mixtures or preparations that may be used for producing hypnotic effects. (b) 'Amphetamine' . . . or compounds or mixtures thereof."[12]

██ Article 8 of chapter 9, incorporated by reference into the statutes contained in division 10.5, provides a specific misdemeanor penalty for violation of the provisions of that chapter, except violation of the provisions of the chapter regulating hypnotics and amphetamines. The obvious legislative intent was to subject a person who violated the provisions of article 8, relating to the excepted dangerous drugs, to the penalties prescribed by division 10.5 of the Health and Safety Code. It is absurd to suppose that the Legislature repealed former section 4233, making it a misdemeanor to violate the hypnotic drug provisions of article 8, expressly excepted hypnotics and amphetamines from the misdemeanor provisions of amended section 4235, and simultaneously created division 10.5 of the Health and Safety Code with the intent either (1) to eliminate any penalty for illegal traffic in the most dangerous drugs, or, (2) as Kessler contends, to subject one who deals illegally in such highly dangerous drugs solely to the misdemeanor penalty prescribed for drug offenses generally, found in section 4382 of article 12 of chapter 9.[13]

---

[12]Among the other provisions of the Bus. & Prof. Code which interlock division 10.5 of the Health & Saf. Code with the Bus. & Prof. Code are sections 4238.5 and 4239. The former section provides in part: "A conviction of the violation of any provision of Chapter 2 (commencing with Section 11910) of Division 10.5 of the Health and Safety Code shall constitute grounds for the suspension or revocation of any . . . license . . . issued to such person under any of the provisions of the Business and Professions Code . . . or under the provisions of this article. . . ."

[13]Section 4382 provides: "Any person violating any of the provisions of this chapter, *when no other penalty is provided,* is guilty of a mis-

It is equally absurd to suppose that the Legislature, which had dealt specially with dangerous drugs and even more particularly with hypnotics and amphetamine, intended section 4393 of article 12 to regulate traffic in drugs which it deemed the most dangerous. Section 4393, upon which Kessler relies, as amended, states, ''No manufacturer or wholesaler shall furnish any drugs to any unauthorized persons.'' The legislative purpose in enacting section 4393 was to provide a catch-all statute relating to unauthorized transactions in those drugs defined generally by section 4031 of article 2. It did not intend section 4393 to apply to dangerous drugs defined in section 4211 of the Business and Professions Code or section 11901 of the Health and Safety Code.

*In re Williamson* (1954) 43 Cal.2d 651 [276 P.2d 593], and *In re Joiner* (1960) 180 Cal.App.2d 250 [4 Cal.Rptr. 97, 410 P.2d 617], cited by Kessler, as applied to the statutes with which we are here concerned, point to a conclusion exactly opposite to that which he urges upon us. Article 8 of chapter 9 of the Business and Professions Code and sections 11911 and 11912 of the Health and Safety Code together constitute the special statutes applicable to Kessler, which prevail over the general statutes, sections 4382 and 4393 of chapter 9.

Kessler is subject to prosecution upon the information filed against him, and the order granting his motion to set aside the information was erroneous.

The order setting aside and dismissing the information is reversed.

Kaus, P. J., and Stephens, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 28, 1967.

---

demeanor. . . .'' [Italics added.] Section 4382 was not amended during the extensive revisions of chapter 9 by the 1965 Legislature. The statute by its terms has no application when another penalty is provided, as is true in respect of violations of the dangerous drug statutes contained in chapter 9.