Filed 12/9/21  P. v. Hardin CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STEVEN TRAVIS HARDIN,<br><br>    Defendant and Appellant. | F079989<br><br>(Super. Ct. No. BF175761A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, and Jennifer Oleksa, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted Steven Travis Hardin (defendant) of multiple counts including unlawfully transporting a controlled substance for sale (Health & Saf. Code, § 11379, subd. (a); count 1) and possession of a controlled substance for sale (*id.*, § 11378; count 2) after police found over 60 grams of methamphetamine in the car defendant was driving and defendant admitted the drugs were his. The trial court also found true strike enhancement allegations as to those counts and two prior prison term enhancements.

On appeal, defendant argues the trial court erred in permitting the prosecution's expert witness to opine on whether defendant possessed and transported the methamphetamine for sale. He also argues his prior prison term enhancements should be struck due to the passage of Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill No. 136).

We will strike defendant's two prior prison term enhancements. We otherwise affirm defendant's convictions.

## FACTUAL BACKGROUND

In February 2019, Kern County Sheriff's Deputy Timothy Findlay stopped a Honda Civic with three occupants including defendant (the driver) and his girlfriend, Carrielee Stacy. Deputy Findlay initiated a felony traffic stop because the license plates on the car were registered to a pickup truck.

With assistance, Deputy Findlay placed defendant, Stacy, and the third passenger in patrol cars. He observed defendant appeared to be under the influence of methamphetamine. When Deputy Findlay asked defendant his name, defendant incorrectly replied it was "Josh Whitehead" and that he had recently purchased the vehicle.

A search of the vehicle uncovered a purse in the front passenger seat containing a case. Deputy Findlay opened the case and discovered two Ziploc bags containing a

2.

substance he believed to be methamphetamine along with 10 unused Ziploc bags. He did not uncover any additional paraphernalia in the vehicle.

Deputy Findlay questioned defendant about the suspected methamphetamine and defendant denied knowledge of its presence. Deputy Findlay then interviewed Stacy, who identified the purse as hers, but also denied knowledge of the methamphetamine. Deputy Findlay informed Stacy she would be placed under arrest for possession of the methamphetamine for sale.

Thereafter, defendant got the attention of Deputy Findlay and admitted the methamphetamine was his. Defendant explained he placed a camera case in Stacy's purse as he was being pulled over. Consequently, Deputy Findlay arrested defendant for possessing and transporting methamphetamine for sale. When Deputy Findlay attempted to run a records search on the name "Josh Whitehead," defendant informed Deputy Findlay of his true name.

A criminologist at the Kern County Regional Crime Lab later tested the substances found in the two Ziploc bags. The tests confirmed the substances as 49.08 and 14.50 grams of methamphetamine, respectively.

An information filed on March 18, 2019, charged defendant with (1) unlawfully transporting a controlled substance in violation of Health and Safety Code section 11379, subdivision (a); (2) possession of a controlled substance for sale in violation of Health and Safety Code section 11378; (3) display of a false vehicle identification in violation of Vehicle Code section 4462.5; (4) operation of a motor vehicle without a valid driver's license in violation of Vehicle Code section 12500, subdivision (a); (5) presenting a false identification to a police officer in violation of Penal Code section 148.9, subdivision (a); and (6) possession of a controlled substance in violation of Health and Safety Code section 11377, subdivision (a). With respect to the first two counts, the information alleged defendant suffered a prior felony conviction on July 3, 2012, and suffered two prior prison convictions.

At trial, the prosecution presented Deputy David Manriquez as its expert. He testified he had investigated "hundreds" of methamphetamine cases and had been designated as an expert on narcotics drug sales over 40 times. Deputy Manriquez further estimated he conducted over a hundred drug sale arrests and over 500 arrests for personal use. He explained personal use cases generally feature small amounts of the narcotic (under one gram of methamphetamine) combined with a form of paraphernalia to ingest it. By contrast, sales cases generally involve larger amounts of methamphetamine accompanied with items, tools, devices (packaging material, multiple cell phones, ledgers (described as "pay/owe sheets"), or weapons). He explained the quantity of the drug is the "number one thing" he examines to discern whether it is a use or sales case. In general, cases exceeding eight or nine grams of methamphetamine present sales cases. Deputy Manriquez opined, based on the circumstances of the case, he believed defendant possessed and transported the methamphetamine for sale.

At the conclusion of trial, the court instructed the jury it was not bound by expert testimony and the jurors were entitled to "disregard any opinion [a juror found] unbelievable, unreasonable, or unsupported by the evidence." Ultimately, the jury found defendant guilty on all counts. With respect to counts 1 and 2, the trial court found true the strike allegation and also found defendant to have suffered two prior prison convictions.

On September 5, 2019, the trial court sentenced defendant to 10 years in prison with respect to count 1. The sentence was composed of the upper term of four years doubled pursuant to the "Three Strikes" law (Pen. Code, §§ 667, subds. (c)–(j), 1170.12, subds. (a)–(e)), and two separate one-year enhancements for defendant's prior prison convictions pursuant to Penal Code section 667.5, former subdivision (b).[1]

_____

[1]As to count 2, the court sentenced defendant to six years and stayed punishment pending successful completion of the sentence on count 1. With respect to counts 3 through 5, the court

# DISCUSSION

## I.  Admissibility of Deputy Manriquez's Opinion Testimony

Defendant's appeal challenges the admission of Deputy Manriquez's opinion testimony (described below) that defendant possessed and transported the methamphetamine for sale.  Defendant contends this testimony improperly addressed his specific intent.  Accordingly, it invaded the jury's province on the issue and "concluded for the jury how the case should be decided."  Defendant argues this ultimately produced prejudicial error warranting reversal of his conviction.  Finally, defendant argues the admission of the testimony implicated his constitutional right to due process.

The People respond defendant forfeited his challenge to the admission of Deputy Manriquez's testimony concerning count 2 by failing to object to the referenced testimony.  They further contend, in any event, the trial court properly admitted the testimony.  Finally, the People argue, even if the trial court erred in admitting the testimony, the error was harmless.

As explained further below, we agree with the People in all respects.

### A.  Relevant Factual Background

The prosecution asked Deputy Manriquez his opinion on (1) whether defendant possessed the methamphetamine for sale; and (2) whether defendant was transporting the methamphetamine.  Deputy Manriquez replied in the affirmative both times.

The relevant testimony is as follows:

"[PROSECUTOR] Q.  And in the overall testimony were you able to form an opinion, based on the evidence you heard in this case, as to whether the defendant possessed the methamphetamine for sale?

"[MANRIQUEZ] A.  Yes.

"Q.  And what is that opinion?

---

sentenced defendant to 90 days in county jail to be served concurrently with count 1.  Finally, the court sentenced defendant to 90 days in county jail for count 6 and stayed that sentence.

"A. I—my opinion, I believe, based on my expertise in the sale—in the field of—specifically methamphetamine sales, that there is enough evidence to say yes, I believe that with this specific case it is a methamphetamine sales case.

"Q. And kind of walk us through—the analysis that you testified to earlier, kind of walk us through the analyses with the facts of this case and how you got there.

"A. Okay. The first thing I like to look for with this case is—the first thing that I do is review the report. The first thing I look for is physical evidence, which is everything that was seized during this investigation. And I kind of just look at how much methamphetamine are we dealing with.

"In this specific case, there is a little over 60 grams of methamphetamine present. With that alone, I believe is enough to associate someone with the sales of methamphetamine.

"In addition to that, we also have packaging material which is present. There was ten individual packages which were Ziploc-style baggies that were—that were located during the investigation.

"Also to—in the false plates on the vehicle. Someone involved in the sale of narcotics, like I explained before, will often attempt to hide from law enforcement who they are. Specifically if they're involved in sales. With having a license plate on your vehicle, it's going to give the information of who the person's identity is, in addition to where they live. If you're involved in the sales of methamphetamine, you definitely don't want—you don't want law enforcement to know that. [¶] … [¶]

"So with the packaging, with the license plates, and with the total package weight alone, I believe enough specifically in this investigation that this is a methamphetamine sales case."

The prosecution then asked Deputy Manriquez his opinion on whether defendant possessed the methamphetamine for transportation and Deputy Manriquez replied:

"Based on the amount of methamphetamine and the subject was occupying a vehicle and it was being—the methamphetamine was being held in the vehicle as it was—as it was—as he was driving it, yes, I believe that this is a—enough to associate that individual with the transportation of methamphetamine."

Here, defendant's counsel objected and moved to strike based on "improper hypothetical" or "improper expert question."  The trial court overruled the objection.

## B.      Standard of Review

A highly deferential standard of review directs this court's inquiry.  (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266.)  Specifically, "[w]e review claims regarding a trial court's ruling on the admissibility of evidence for abuse of discretion."  (*Ibid.*)  Therefore, it will not be disturbed absent a showing the trial court """exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.""  (*People v. Morales* (2020) 10 Cal.5th 76, 97, quoting *People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.)

Moreover, if defendant meets this burden, he faces the additional hurdle of establishing prejudice under the *People v. Watson* (1956) 46 Cal.2d 818 standard for harmless error to obtain the relief he seeks—reversal of his conviction.  (*People v. Gonzalez* (2018) 5 Cal.5th 186, 195.)  Accordingly, defendant must "demonstrate[] that it is '"reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."'"  (*Ibid.*, quoting *Watson*, at p. 837.)

## C.      Applicable Law

Evidence Code section 720, subdivision (a) provides "[a] person is qualified to testify as an expert if he has special knowledge, skill, experience, [or] training" sufficient to qualify as an expert on the subject to which his testimony relates.  "The general test for the admissibility of expert testimony is the question of whether the testimony concerns a subject 'sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.'"  (*People v. Johnson* (1993) 19 Cal.App.4th 778, 786–787, quoting Evid. Code, § 801, subd. (a); see *People v. Vang* (2011) 52 Cal.4th 1038, 1044.)  "Testimony in the form of an opinion that is otherwise admissible is not objectionable

because it embraces the ultimate issue to be decided by the trier of fact." (Evid. Code, § 805.)

Our Supreme Court has remarked that "'[w]hen expert opinion is offered, much must be left to the trial court's discretion.'" (*People v. Rodriguez* (2014) 58 Cal.4th 587, 639; see *People v. McDowell* (2012) 54 Cal.4th 395, 426 ["The trial court has broad discretion in deciding whether to admit or exclude expert testimony"].) Expert opinion testimony "'"'will be excluded only when it would add *nothing at all* to the jury's common fund of information, i.e., when "the subject of inquiry is one of such common knowledge that men [and women] of ordinary education could reach a conclusion as intelligently as the witness."'"'" (*People v. Edwards* (2013) 57 Cal.4th 658, 756.)

### D. Analysis

For the reasons that follow, we conclude defendant forfeited his challenge to Deputy Manriquez's opinion defendant possessed the methamphetamine for sale by failing to object. Notwithstanding forfeiture, the trial court properly admitted the testimony. In narcotics cases, the law permits Deputy Manriquez to testify as he did. Even assuming, arguendo, the trial court abused its discretion in permitting the challenged testimony, defendant fails to meet his burden of establishing prejudice. Finally, defendant's constitutional due process argument also lacks merit.

#### 1. Defendant Forfeited His Challenge to Deputy Manriquez's Testimony this Was a "Sales Case"

Evidence Code section 353, subdivision (a) proscribes setting aside a verdict by reason of erroneous admission of evidence unless "[t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion …." (See *People v. Keo* (2019) 40 Cal.App.5th 169, 187.) Failure to raise a timely and specific objection forfeits the right to raise that issue on appeal. (See *People v. Partida* (2005) 37 Cal.4th 428, 433–436 [discussing forfeiture].) The Supreme Court interprets this requirement

8.

"reasonably" in accordance with the statutory requirements.  (*Id*. at p. 434.)  "'Reviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence.'"  (*People v. Brooks* (2017) 3 Cal.5th 1, 92; see *People v. Welch* (1993) 5 Cal.4th 228, 237.)

Here, it is undisputed defendant did not object to Deputy Manriquez's opinion "this specific case … is a methamphetamine sales case."  The prosecution then asked Deputy Manriquez how he formed that opinion and Manriquez answered without objection.  Defendant only objected based on "improper expert question" after Manriquez opined the evidence was "enough to associate [defendant] with the transportation of methamphetamine."  However, he argues the forfeiture doctrine should not apply to the former testimony because any objection to such testimony "would have been futile" in light of the court overruling his later objection to Deputy Manriquez's opinion defendant possessed the methamphetamine for transportation.

Contrary to defendant's contention, his objection to Deputy Manriquez's second opinion did not excuse his failure to object to the first.  (See *People v. Seumanu* (2015) 61 Cal.4th 1293, 1339 [concluding later objection did not excuse "defendant from the requirement of a timely and specific objection" in the first instance]; accord, *People v. Redd* (2010) 48 Cal.4th 691, 728 [holding defendant did not preserve challenges to out-of-court identifications of him by three separate witnesses as violative of Evid. Code, § 1238 where he only objected to first witness on that basis and objection was overruled].)  Moreover, defendant does not direct us to any portion of the record that suggests a properly lodged, meritorious objection would have been futile or that otherwise excuses his failure to object.  (See *People v. Seumanu*, *supra*, at p. 1339 [rejecting argument objection would have been futile because later objection signaled earlier objection would have been overruled]; accord, *Redd*, *supra*, at p. 729, fn. 18 [rejecting argument objection would have been futile because court sustained earlier

objection on one occasion and concluding case did "not establish any basis to excuse the defense's failure to object"].) Therefore, defendant has partially forfeited his challenge to Deputy Manriquez's testimony.

However, as explained below, it would not alter the outcome had defendant effectively preserved his claim of error.

### 2. The Trial Court Did Not Abuse its Discretion in Permitting the Challenged Opinion Testimony

Turning to the merits, defendant argues Deputy Manriquez "twice improperly opined [defendant] had a specific intent." According to defendant, the opinion testimony at issue was not sufficiently beyond common experience such that it would assist the jury. Consequently, defendant contends the testimony should have been excluded. We disagree.

As the People note, our Supreme Court has held "it is settled that an officer with experience in the narcotics field may give his opinion that the narcotics are held for purposes of sale based upon matters such as quantity, packaging, and the normal use of an individual." (*People v. Hunt* (1971) 4 Cal.3d 231, 237; accord, *People v. Newman* (1971) 5 Cal.3d 48, 53, disapproved on another ground in *People v. Daniels* (1975) 14 Cal.3d 857, 862; see *People v. Dowl* (2013) 57 Cal.4th 1079, 1084 [discussing the rule in *Hunt*].) "Thereafter, it is for the jury to credit such opinion or reject it." (*People v. Harris* (2000) 83 Cal.App.4th 371, 375.)

Accordingly, there is a consistent line of case law confirming that whether drugs are possessed for the purpose of sale is a matter beyond the experience of the average juror and is an appropriate subject for expert testimony from law enforcement. (See, e.g., *People v. Carter* (1997) 55 Cal.App.4th 1376, 1378 [holding trial court properly admitted expert opinion testimony that defendant possessed narcotics for sale]; accord, *People v. Parra* (1999) 70 Cal.App.4th 222, 227 [testimony of two experienced narcotics interdiction officers that defendant possessed cocaine with intent to sell based upon

quantity of drugs seized and lack of drug paraphernalia in car supported defendants' convictions]; see *People v. Peck* (1996) 52 Cal.App.4th 351, 357 [same]; *People v. Doss* (1992) 4 Cal.App.4th 1585, 1596 [holding trial court did not err in permitting expert opinion testimony from Bureau of Narcotic Enforcement officer concerning whether defendant possessed certain prescription drugs for sale].) The rule exists because the "habits of those who possess [narcotics] for their own use and those who possess [narcotics] for sale," are not necessarily known to laypersons. (*People v. Hunt*, *supra*, 4 Cal.3d at p. 237.)

Here, Deputy Manriquez's testimony was proper, and the court did not err in admitting it. Manriquez testified, based on the circumstances, he believed this to be a "methamphetamine sales" case, and the circumstances of the case were enough "to associate that individual with the transportation of methamphetamine." He had served as an expert witness concerning narcotics sales in over 40 cases. He testified based on his experience about the amount needed for an individual dose of methamphetamine and the facts that differentiate possession for personal use and possession for sale. And he formed his opinions defendant now challenges based on the physical evidence in the case. For example, Deputy Manriquez supported his opinion that it was a "methamphetamine sales case" with reference to the quantity of methamphetamine seized. He also relied upon the presence of packaging material—the 10 empty Ziploc bags found with the methamphetamine. The testimony also noted the false license plates on defendant's vehicle and the lack of paraphernalia uncovered. Manriquez again referred to the amount of the narcotic and the undisputed fact defendant was operating the vehicle in support of his opinion defendant possessed the methamphetamine for transportation. In sum, when comparing the case law on the scope of expert testimony in narcotics cases to Deputy Manriquez's testimony, we see no error. Instead, we conclude the trial court properly admitted the opinion testimony.

Defendant directs the court to *People v. Vang*, *supra*, 52 Cal.4th 1038 (*Vang*) and *In re Frank S.* (2006) 141 Cal.App.4th 1192 (*Frank S.*) in support of his claim of error. Notably, on reply, defendant suggests that *Vang* disapproved the case law concerning the admissibility of law enforcement testimony as described above. We disagree.

In *Vang*, our Supreme Court considered the propriety of hypothetical questions posed to a gang expert for purposes of eliciting the expert's opinion on whether an assault was gang related. (*Vang*, *supra*, 52 Cal.4th at p. 1044.) The court held the trial court properly permitted such questioning. (*Id*. at pp. 1049–1052.) In so holding, the *Vang* court distinguished expert testimony on whether the specific defendants acted for a gang reason. (*Id.* at p. 1048.) It noted, in that case, the expert could not testify directly on whether the defendants committed the charged assault for gang purposes because the expert had no personal knowledge of the charged assault, and "[t]he jury was as competent as the expert to weigh the evidence and determine what the facts were, including whether the defendants committed the assault." (*Id*. at p. 1048.)

Contrary to defendant's contention, *Vang* did not address the equally binding (and far more applicable) case law concerning the proper scope of expert law enforcement testimony in narcotics cases. (See *People v. Hunt*, *supra*, 4 Cal.3d at p. 237; *People v. Newman*, *supra*, 5 Cal.3d at p. 53.) Rather, it left open the possibility that "in some circumstances, expert testimony regarding the specific defendants might be proper." (*Vang*, *supra*, 52 Cal.4th at p. 1048, fn. 4.) Thus, we cannot conclude *Vang* disapproved of or abrogated that line of authority. (See *People v. Brown* (2012) 54 Cal.4th 314, 330 ["cases are not authority for propositions not considered"]; see generally *People v. Dowl*, *supra*, 57 Cal.4th at pp. 1089–1090 [concluding officer's expert opinion defendant intended to sell marijuana, coupled with his testimony regarding circumstances that, in his experience, were consistent with that conclusion, provided substantial evidence to support defendant's conviction].)

The Fourth Appellate District, Division One's opinion in *People v. Romo* (2016) 248 Cal.App.4th 682 is instructive. There, the defendant was charged with importing heroin and methamphetamine from Mexico to California and possessing the methamphetamine for sale. (*Id.* at p. 684.) At trial, the prosecution offered testimony from a Department of Homeland Security agent who testified that, in his opinion, the defendant was not a "blind mule" (i.e., unaware of the drugs in his car when he crossed the border). (*Id.* at pp. 688–689.) On appeal, the defendant challenged the agent's testimony as improper expert testimony. (*Id.* at pp. 697–698.)[2] The Court of Appeal disagreed, and citing *Vang*, stated:

> "Indeed, while it is true that an expert cannot opine concerning the guilt or innocence of a defendant '"the testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." [Citation.]' [Citation.]

> "Here, [the agent] did not opine on defendant's guilt or innocence. Rather he relied on various factors to opine that defendant was not a blind mule, including the quantity, type, and location of the drugs found …. Such testimony was not improper." (*People v. Romo*, *supra*, 248 Cal.App.4th at p. 697.)

As in *People v. Romo*, Deputy Manriquez did not opine on defendant's guilt or innocence. Rather, he relied on various factors, including the quantity and circumstances under which the drugs were found, to opine this was a "sales" case and defendant possessed the drugs to transport them. And we do not read *Vang* as precluding Deputy Manriquez from testifying in the manner that he did. Defendant's reliance on *Vang* is misplaced.

In *Frank S.*, we concluded insufficient evidence supported the defendant's gang enhancement. (*Frank S.*, *supra*, 141 Cal.App.4th at p. 1196.) We criticized the expert

---

[2]Notably, *Romo* also featured testimony from an Agent Richardson who opined that the defendant possessed the drugs for sale based on the amount of narcotics found in the vehicle. (*People v. Romo*, *supra*, 248 Cal.App.4th at p. 687.) The defendant did not challenge Agent Richardson's opinion on appeal. (*Ibid.*)

13.

testimony offered in that case as impermissibly pertaining to "the *subjective knowledge and intent*" of the defendant. (*Id*. at p. 1198, citing *People v. Killebrew* (2002) 103 Cal.App.4th 644, 658.[3]) We explained the expert testifying on "her belief of the minor's intent with possession of the knife" addressed an issue reserved for the jury. (*Frank S.,* at p. 1199.) We noted the expert opinion was especially inappropriate because the prosecution provided no other substantial evidence in support of the intent element of the special allegation. (*Ibid*.) Importantly, we expressed our concern that permitting an expert to testify on the specific intent element of the gang enhancement created potential for abuse. (*Ibid*.) Specifically, we wrote:

> "The prosecution did not present any evidence that the minor was in gang territory, had gang members with him, or had any reason to expect to use the knife in a gang-related offense…. To allow the expert to state the minor's specific intent for the knife without any other substantial evidence opens the door for prosecutors to enhance many felonies as gang-related and extends the purpose of the statute beyond what the Legislature intended." (*Frank S.*, *supra*, 141 Cal.App.4th at p. 1199.)

The concerns we outlined in *Frank S.* are not present in this case. This is not a gang case. Deputy Manriquez provided opinion testimony within the permissible bounds of narcotics cases. Other compelling physical evidence and testimony, beyond the challenged opinion testimony, supported the conviction. Thus, our opinion in *Frank S.* does not lead us to the conclusion the trial court abused its discretion in this case.

In sum, we are faced with a record where an experienced law enforcement officer provided opinion testimony that narcotics were possessed and transported for sale with reference to (among other items) (1) packaging; (2) false license plates on a vehicle; and (3) the amount of methamphetamine found in defendant's car. The law permits this

---

[3]In *Vang*, the Supreme Court disapproved of our opinion in *Killebrew* to the extent it purported to condemn an expert's opinions in response to hypothetical questions. (*Vang*, *supra*, 52 Cal.4th at pp. 1047–1048.)

testimony.  Therefore, we conclude the trial court did not abuse its discretion in allowing the challenged testimony.

### 3. Any Alleged Error Was Harmless and Does Not Warrant Reversal of the Conviction

Ultimately, defendant asks us to reverse his conviction because the disputed testimony "essentially instructed the jury how the case should be decided."  He elaborates "no reasonable juror could or would ignore" Deputy Manriquez's testimony after hearing it.  Consequently, defendant asserts it is reasonably probable he would have been convicted of simple possession of the narcotic had the testimony not been admitted.

Although defendant has not met his initial burden to demonstrate the trial court abused its discretion, we would not reverse his conviction even if he had because he has not demonstrated a reasonable probability he would have obtained a more favorable verdict absent Deputy Manriquez's challenged testimony.  (See *People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

Contrary to defendant's argument, substantial evidence—aside from the challenged portion of Deputy Manriquez's testimony—supports the verdict.  To begin with, Manriquez testified methamphetamine cases exceeding a quantity of eight or nine grams generally present "sales case[s]."  Here, there is no dispute defendant possessed 63.58 grams of methamphetamine and Manriquez's unchallenged testimony established the amount needed for a single dose of methamphetamine is typically 0.01 gram.  Manriquez further explained the amount of methamphetamine defendant possessed had a street value of $1,200.  Aside from Deputy Manriquez's opinion that the drugs were possessed and transported for the purpose to sell, there was other tangible, compelling evidence offered in this case supporting the verdict and to which defendant posed no objection.

Beyond that, the trial court's instructions to the jury mitigated any risk of prejudice.  The trial court instructed the jury it was "not required to accept [Deputy

Manriquez's testimony] as true or correct." The court also explained to the jurors they could "disregard" any expert opinion "unbelievable, unreasonable, or unsupported by the evidence." Thus, irrespective of the propriety of Deputy Manriquez's testimony, the jury was informed it was not bound by it and was free to ignore it if it concluded it was not supported by the evidence.

We are required to review the entire record of this action to determine whether a "miscarriage of justice" occurred requiring reversal of defendant's conviction. (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.) Defendant fails to direct us to any portion of the record compelling that result. Therefore, even if the trial court erred in admitting Deputy Manriquez's testimony, it did not commit reversible error.

Finally, defendant also asserts Deputy Manriquez's opinion testimony "rendered [his trial] fundamentally unfair in violation of his federal due process rights" because it is reasonably probable the jury would have convicted him of simple possession without it.

When an error of federal constitutional rights occurs, it implicates the *Chapman* standard of review. (*Chapman v. California* (1967) 386 U.S. 18.) Under *Chapman*, a reviewing court examines the claimed constitutional error and determines whether or not it is "'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" (*People v. Aranada* (2012) 55 Cal.4th 342, 367.)

Our Supreme Court has stated "the admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial *fundamentally unfair*." (*People v. Partida*, *supra*, 37 Cal.4th at p. 439.) "Absent fundamental unfairness, state law error in admitting evidence is subject to the traditional *Watson* test." (*Ibid.*; see *People v. Fudge* (1994) 7 Cal.4th 1075, 1103–1104 [evaluating trial court's ruling on hearsay objection under *Watson*]; *People v. McDaniel* (2019) 38 Cal.App.5th 986, 1005 [evaluating the erroneous admission of text messages under *Watson*]; see also *People v. Sotelo-Urena* (2016) 4 Cal.App.5th 732, 756 [evaluating the trial court's exclusion of expert testimony under *Watson*].) Only on "rare and unusual occasions" can

admission of evidence result in an error of such magnitude so as to raise federal due process concerns and trigger *Chapman* review. (*People v. Albarran* (2007) 149 Cal.App.4th 214, 231.)

We see no deprivation of defendant's due process rights on this record. Contrary to defendant's contention, as discussed *ante*, we disagree it was reasonably probable he would have obtained a more favorable result absent Deputy Manriquez's opinion testimony. And he points to nothing else in the record to suggest the inclusion of such testimony was an error of such magnitude so as to render the trial fundamentally unfair. We therefore reject defendant's constitutional argument.

## II.     Prior Prison Term Enhancements

As to count 1, the trial court sentenced defendant to the upper term of eight years plus 2 one-year enhancements for prior prison terms pursuant to Penal Code section 667.5, former subdivision (b) on September 5, 2019. Defendant asks this court to strike the one-year sentence enhancements because amended Penal Code section 667.5 applies to him retroactively. The People agree this is the correct result. We agree.

### A.     Standard of Review

This issue raises the *Estrada* rule. (*In re Estrada* (1965) 63 Cal.2d 740.) Under *Estrada*, a presumption exists that "statutory amendments that reduce the punishment for a crime … apply retroactively in cases where the judgment is not final on the statute's operative date." (*People v. Barton* (2020) 52 Cal.App.5th 1145, 1152.) The *Estrada* rule applies "'to statutes governing penalty enhancements, as well as to statutes governing substantive offenses.'" (*Barton*, at p. 1152, quoting *People v. Nasalga* (1996) 12 Cal.4th 784, 792.) Moreover, "[f]or purposes of the *Estrada* rule, a judgment is not final so long as courts may provide a remedy on direct review." (*People v. Jennings* (2019) 42 Cal.App.5th 664, 682.)

17.

## B. Applicable Law

Penal Code section 667.5, former subdivision (b) required a one-year prison enhancement where a defendant served separate prior prison terms and had "not remained free of custody for at least five years." (*People v. Jennings*, *supra*, 42 Cal.App.5th at p. 681.) Via Senate Bill No. 136 (enacted Oct. 8, 2019), the Legislature amended this portion of the Penal Code to apply a one-year enhancement only if "'a defendant served a prior prison term for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b).'" (*People v. Gastelum* (2020) 45 Cal.App.5th 757, 772.) This amendment became effective January 1, 2020. (*Ibid*.) "Senate Bill No. 136's amendment to section 667.5, subdivision (b) applies retroactively to all cases not yet final as of its January 1, 2020 effective date." (*Jennings*, *supra*, at p. 682 [discussing the *Estrada* rule].)

## C. Analysis

The trial court sentenced defendant on September 5, 2019—when Penal Code section 667.5, former subdivision (b) required the trial court to impose the sentence it did.

Because defendant's case is presently before us, the judgment is not final. (*People v. Jennings*, *supra*, 42 Cal.App.5th at p. 682.) Moreover, defendant's prior prison sentences—one for robbery and one for unlawful possession of a firearm—are not for "sexually violent offenses" within the meaning of Welfare and Institutions Code section 6600, subdivision (b). Therefore, defendant is entitled to the benefit of Senate Bill No. 136.

Here, the court imposed the maximum possible sentence—imposing the upper term on counts 1 and 2. Therefore, a remand to the court for resentencing is not necessary. (*People v. Lopez* (2019) 42 Cal.App.5th 337, 342.) Instead, we order the two enhancements stricken, affirm the judgment as modified, and direct the trial court to prepare an amended abstract of judgment reflecting this modification of the judgment. (*Ibid.*; see *People v. Winn* (2020) 44 Cal.App.5th 859, 873.)

18.

## DISPOSITION

The 2 one-year enhancements imposed pursuant to Penal Code section 667.5, former subdivision (b) are stricken. As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting the modification and forward a certified copy of the amended abstract of judgment to the appropriate authorities.

PEÑA, J.

WE CONCUR:


HILL, P. J.


SMITH, J.